## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SUZANNE CLEMMONS,                                    Case No. 1:10-cv-902

        Plaintiff,                                    Spiegel, J.
                                                     Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


### REPORT AND RECOMMENDATION

Plaintiff Suzanne Clemmons filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff applied for Disability Insurance Benefits ("DIB") in May 2007, alleging disability due to a combination of mental and physical impairments, with an onset date of May 7, 2005 (Tr. 13, 103).  After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   An evidentiary hearing was held in September, 2009, at which Plaintiff was represented by counsel.   At the hearing, Administrative Law Judge ("ALJ") Donald Becher heard testimony from Plaintiff, and from Mark Pinti, an impartial vocational

1

expert.  (Tr. 23-70).  On October 21, 2009, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff is not disabled. (Tr. 11-22).

The record on which the ALJ's decision is based reflects that Plaintiff was born in 1968 and was 36 years old on her alleged onset date.  (Tr. 21).  She injured her back in a work-related accident on May 7, 2005, and received workers' compensation benefits until January 15, 2007.  (Tr. 34-35, 104).  Plaintiff graduated from high school, and previously worked at Walgreen's in the photo lab, as a cashier, and stocking shelves. (Tr. 32).  Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease at L5-S1; plantar fasciitis, billaterally; pitting edema with venous insufficiency, bilaterally; calcaneal spur, bilaterally; obesity; and depressive disorder.  (Tr. 13).

The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id.*).  Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of sedentary work, with the following additional limitations:

> [A] medically required hand-held assistive device is necessary for ambulation.  She can never climb ladders, ropes, or scaffolds and can occasionally balance, stoop, crouch and crawl.  She must avoid heights, hazardous machinery and uneven terrain.  The claimant retains the ability to understand, remember and carry out simple to moderately complex job instructions and can adapt to routine work settings.

(Tr. 14-15).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy.  (Tr.

20-21).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB.  (Tr. 22).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to consider the effects of Plaintiff's extreme obesity and the requirement that she use a hand-held assistance device when determining that she did not meet or equal Listing 1.04; (2) by failing to consider her extreme obesity in determining her physical RFC; and (3) by rejecting the opinion of treating physician, Dr. Simons, concerning the level of Plaintiff's pain.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits

must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

### 1.  Failure to Adequately Consider Obesity and Assistance Device at Step 3 and Failure to Consider Obesity at Step 4

Plaintiff's first assertion of error focuses on Step 3 of the sequential analysis, during which the ALJ must determine whether a claimant meets or medically equals a Listing, thereby entitling her to a presumptive disability finding.  Plaintiff's second assertion of error focuses on Step 4 of the sequential analysis, but to the extent that both claims of error relate to Plaintiff's obesity, the Court will discuss them together.

The record reflects that Plaintiff is 5'2" and weighs 300 pounds.  (Tr. 15, 28). Plaintiff argued at the administrative level that she met or equaled Listing 1.04, based upon her herniated disk, numbness, positive EMG, radiculopathy, and positive straight leg raising test. (Tr. 69)  The ALJ accurately described the criteria for that Listing as follows:

> Listing 1.04(A) requires the claimant to demonstrate evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  Listing 1.04(B) requires a showing of spinal arachnoiditis, and Listing 1.04(C) requires a showing of spinal stenosis with pseudoclaudication.

(Tr. 13).

While finding no fault with the description of the Listing, Plaintiff argues that the ALJ erred by concluding without sufficient explanation at Step 3 of his sequential analysis that the Plaintiff "has not demonstrated these findings." (*Id.*). In addition, Plaintiff contends that the ALJ erred by failing to apply Soc. Sec. Ruling 02-1p, by considering the "additional and cumulative effects" of her morbid obesity in his analysis of why Plaintiff did not medically equal Listing 1.04. *See* Listing 1.00(Q).

Plaintiff relies upon *Diaz v. Comm'r*, 577 F.3d 500 (3rd Cir. 2009), in which the Third Circuit Court of Appeals remanded on similar facts. There, like the instant case, the plaintiff had claimed that she met or medically equaled a Listing based in part upon her morbid obesity. In *Diaz* as here, the ALJ agreed that the plaintiff's morbid obesity was a "severe" impairment, but the Court of Appeals remanded based upon ALJ's failure to comply with SSR 02-1p by considering - and explaining in his written analysis- the effects of morbid obesity at Step 3 and beyond.

Regrettably, the Defendant fails to discuss *Diaz*, and fails to offer any significant discussion in opposition to this asserted error at Step 3. Instead, moving on to Plaintiff's second assertion of error at Step 4 of the sequential analysis (the determination of the Plaintiff's residual functional capacity), Defendant argues that "a close reading of the ALJ's decision shows that in his RFC assessment he addressed the additional limitations imposed by Plaintiff's obesity (Tr. 15-17)." (Doc. 12 at 8).

Other federal courts, like the Third Circuit in *Diaz*, have held that a blanket statement that a claimant does not meet or medically equal any Listing is legally insufficient to comply with Step 3 of the sequential analysis, in the absence of additional analysis that provides a basis for that conclusion. *See, e.g., Diaz, supra; Audler v.*

*Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3rd Cir. 2000).  By contrast, to date, no *published* Sixth Circuit case requires an ALJ to articulate in any particular detail the manner in which a claimant failed to meet or equal a Listing.  To the contrary, historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006)(stating in a case where obesity was not severe, that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed.  *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).

The problem in this case is that, as in *Diaz*, the ALJ's analysis of the claimed impact of Plaintiff's morbid obesity on Listing 1.04 does not permit this Court to conduct meaningful judicial review.  The closest that the ALJ came to any explanation was the conclusory statement that Plaintiff's "severe impairments do not meet or equal any applicable listing, *even when the additional and cumulative effects of obesity are considered (see SSR 02-1p)*."  (Tr. 14, emphasis added).  Despite the conclusory statement that obesity was considered at Step 3, the ALJ's written decision offers no clues as to how Plaintiff's obesity was considered at either Step 3 or Step 4.

Although in *Bledsoe* the Sixth Circuit held that no particular type of analysis is required to comply with SSR 02-1p, at least two unpublished Sixth Circuit cases, as well as both unpublished and published cases from this district, support Plaintiff's position that greater analysis was required at Steps 3 and 4 in this case. *See Reynolds v.*

*Comm'r of Soc. Sec.,* 424 Fed Appx. 411, 2011 WL 1228165 *4 (6th Cir. April 1, 2011)(agreeing with Third and Fifth Circuits and holding that an ALJ must in fact "give an explained conclusion" as to why a claimant's impairment does or does not meet a potentially relevant Listing); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 768 (6th Cir. 2007)(same); see *also Norman v. Astrue,* 694 F. Supp.2d 738, 741 (N.D. Ohio 2010)(where obesity is severe impairment, ALJ must do more than "mention the fact in passing."); *Miller v. Comm'r of Soc. Sec*., 181 F. Supp.2d 816, 820 (S.D. Ohio 2001)(directing remand where ALJ's decision contained no discussion at all, and plaintiff presented "evidence suggesting that he was disabled under Listing §11.03" based upon objective EEG findings, and testimony concerning the frequency and severity of his epileptic seizures); *Motley v. Comm'r of Soc. Sec*., Case No. 1:08-cv-418-SAS, 2009 WL 959876 (S.D. Ohio April 8, 2009)(remanding based upon failure to discuss evidence in light of analytical framework of Listing, including effect of obesity).

The ALJ acknowledged medical evidence that Plaintiff's obesity "severely compromised her recovery and limited her treatment options," including precluding her from back surgery. (Tr. 15-16, 222). Plaintiff's obesity also made it "difficult" for her to undergo "full" nerve study testing. (Tr. 16-17). Numerous medical records refer to Plaintiff's obesity; her treating physician states flatly that her "overall pain syndrome is complicated by her morbid obesity." (Tr. 367; *see also* Tr. 397, noting that obesity interferes "significantly" with pain and ambulation). In another record, Dr. Simons stated "it is difficult for her to walk for any long periods of time due to her weight." (Tr. 386). Medical records also reflect symptoms such as "swelling of both legs attendant with obesity." (Tr. 221). Although a detailed Step 3 analysis and more detailed consideration

at Step 4 may not be required in every case, I conclude that additional analysis was necessary on the facts of *this* case, where Plaintiff's obesity was a "severe" impairment which clearly had a significant impact on her pain level and functional limitations.

The Defendant's brief argument that Plaintiff "has not presented evidence of any functional limitations resulting specifically from her obesity" is unpersuasive. Plaintiff's contention is that her morbid obesity combined with other impairments is the medical equivalent of Listing 1.04, and/or precludes her from all sedentary work. *See Lowry v. Astrue*, 2008 WL 4372658 *6 (S.D. Ohio 2008)(where Plaintiff has asserted her obesity in combination with other impairments precludes her from all sedentary work, argument that she was required to identify additional specific limitation was a "red herring.")

In addition to the error in failing to adequately consider her obesity at Steps 3 and 4, Plaintiff asserts that the ALJ failed to consider whether her use of a cane or other ambulatory aid resulted in a medical equivalent to the Listing. Plaintiff points out that Listing 1.00(J)(4) explicitly requires an ALJ to consider whether use of a hand-held assistive device impacts an individual's functional capacity "by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling."

Defendant argues that Plaintiff's argument is so perfunctory as to be waived. I disagree. In addition to noting the same general error as *Diaz,* Plaintiff's assertion with respect to her use of a cane specifically points to functional limitations for lifting, carrying, pushing, and pulling.

The record reflects that the ALJ made a finding that Plaintiff requires use of a hand-held ambulatory aid, and that she could "never" climb ladders, ropes or

scaffolding.  In addition, the ALJ limited Plaintiff to sedentary work, with the additional restriction that she can only "occasionally balance, stoop, crouch and crawl."  The social security guidelines define "occasional" to be up to one third of the time, but the ALJ does not appear to have considered the impact - if any- of Plaintiff's obesity and her need to use a cane on her ability to engage in such activities as stooping, crouching, and crawling.[1]  *Contrast Moody v. Comm'r of Soc. Sec.,* 2011 WL 3840217 (E.D. Mich. July 15, 2011)(affirming where medical evidence reflected obesity, and ALJ found that Plaintiff could not engage in *any* climbing, crawling, bending, kneeling, stooping or crouching, could stand for no more than 10 minutes at a time, and required a sit/stand option, all of which addressed mobility problems associated with obesity).  In addition, the record is completely silent regarding any effect of the ambulatory aid on Plaintiff's abilities to lift, carry, push or pull.  A silent record on such relevant issues does not permit meaningful judicial review.

**2.  Rejection of Opinions of Treating Specialist Dr. Simons**

Plaintiff's third claim of error, concerning the rejection of the opinions of her treating physician, confirms the need for remand in this case.  Plaintiff has been treated by pain specialist, Dr. Mitchell Simons, nearly once per month for more than three years.   Dr. Simons referred Plaintiff to Novacare Rehabilitation tor work-related functional testing, which testing was completed on September 10, 2009.  Dr. Simons subsequently affirmed that assessment, which included functional limitations incompatible with any work, but which the ALJ declined to adopt.  The assessment also opines that Plaintiff is incapable of even sedentary work due in part to her pain level.

---

[1]Non-examining physicians who completed RFC forms provide no indication at all that they considered Plaintiff's obesity - or even that they were aware of it.  (*See, e.g.,* Tr. 346-347, 379).

Applicable regulations require an ALJ to give "controlling weight" to the opinions of a treating physician, so long as that opinion "is well-supported by medical acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §404.1527(d)(2); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931, 937 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(additional citation omitted)). The regulation also contains a specific duty to "always give good reasons...for the weight we give [a] treating source's opinion." *Id*., quoting 20 C.F.R. §404.1527(d)(2). The "good reasons" must "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*., quoting Soc. Sec. Rul. 96-2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or *de minimis*, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)(*quoting Wilson*, 378 F.3d at 547).

In this case, the ALJ rejected the assessment completed by Novacare Rehabilitation and adopted by Dr. Simons as "not consistent with the evidence,"

apparently based largely on the ALJ's determination that Plaintiff's pain complaints were not credible, and that she "does not have consistently documented neurological or radicular symptoms." (Tr. 18).  To the extent that the RFC reflected the opinions of Plaintiff's treating physician who approved it, the ALJ explained his rejection on the basis that: "[h]er pain management doctor scrawled an obviously hurried signature on a cover sheet indicating that he agreed with the evaluation, but did not evaluate her himself and gave no indication why he agreed with the evaluation."  (Tr. 18).

Aside from his disparaging view of Dr. Simons' signature,[2] the ALJ's analysis fails to acknowledge the abundance of documentation of pain symptoms, and both neurological and radicular symptoms, in virtually all of Dr. Simons' extensive clinical records.  Dr. Simons reported a disc protrusion affecting the S1 nerve root, positive straight leg raise test, antalgic gait with cane, tenderness, reduced range of motion, and weakness in the left leg, all of which would have supported Plaintiff's claim that she met or medically equaled Listing 1.04, as well as her subjective complaints and a more limited RFC.  The ALJ commented on Dr. Simons' clinical findings including radiculopathy, but never states that he is rejecting them.  Instead, the ALJ states:

> The undersigned does not dismiss these findings, but they are not considered conclusive in light of Dr. Fundala's [sic] Dr. Khan's, and hospital doctors' findings to the contrary.  It is noteworthy that Dr. Mitchell [sic] relied on Dr. Geier's EMG findings in diagnosing radiculopathy.  But when Dr. Simons sent the claimant for a repeat MRI in May 2008, it showed the small paracentral herniated disc at L5-S1, but the interpreting radiologist, Dr. Noh, stated unequivocally that "it does not compress on the left S1 nerve root."

---

[2]The ALJ's description implies a lack of full review by Dr. Simons, but the Court confesses that it has on more than one occasion "hurried" a signature on an opinion after painstaking review.  In any event, out of curiosity the undersigned magistrate judge attempted to review the "hurried" signature, but was unable to locate it on the referenced form, portions of which are illegible in the Court's record.

(Tr. 17).   In declining to formally "dismiss" the findings, the ALJ seems to be attempting to straddle the fence between accepting Dr. Simons' controlling medical opinions concerning Plaintiff's radiculopathy and pain level, and rejecting those opinions. However, when the ALJ's decision is read in total, it is obvious that he rejected virtually all of Dr. Simons' opinions.

Unfortunately, the ALJ's analysis is contrary to law.   Not only does he fail to clearly articulate whether he is rejecting all or just some of Dr. Simons' opinions, but he never explains what weight he is giving to those opinions.   In addition, the ALJ fails to articulate any of the factors he was legally required to consider when rejecting a treating physician's opinion, such as the length of the treating relationship, frequency of examinations, and consistency with the record as a whole.   Therefore, his analysis does not satisfy the "good reasons" rule as applied in the Sixth Circuit.   *See Hensley v. AStrue*, 573 F.3d 263, 267 (6th Cir. 2009)(quoting *Wilson*, 378 F.3d at 545)("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

To the extent that the ALJ rejected Dr. Simon's findings of radiculopathy based upon the lack of any supporting evidence, the ALJ's analysis was incorrect.   The ALJ states that "examinations have shown *no evidence* of nerve root compromise," (emphasis added), when in fact multiple clinical records and objective tests reflect evidence of radiculopathy.   (*See e.g.*, Tr. 214, 220, 223, 226, 240-41, 266, 287, 358-362, 364-65, 368, 370-73, 407, 414, 416).   In fact, only one objective test - a 2008

13

repeat MRI ordered by Dr. Simon- reported the lack of nerve root involvement.  (Tr. 423).  Although the 2008 MRI provides at least some minimal support for a finding that Plaintiff does not have nerve root impingement, contrary to Dr. Simons' medical opinion, the ALJ's analysis falls short of stating "good reasons."

To the extent that the ALJ refers to "contrary" medical findings by Drs. Kahn, Fudula, and "hospital doctors," the ALJ's analysis is clearly flawed.  Dr. Kahn's notes do not reflect whether he ever reviewed the 2005 MRI that objectively showed nerve root compression; a record dated October 7, 2005 wherein Dr. Kahn recommends that Plaintiff "get an MRI" implies that he did not.  (Tr. 263).  Also, a number of Dr. Kahn's records are consistent with radicular symptoms. (*See* Tr. 266, noting "severe low back pain" that "radiates to her lower extremities.").

Dr. Fudula, whose opinion the ALJ also cited as "contrary" to Dr. Simons' opinion that Plaintiff suffers from radiculopathy, is a chiropractor.  Ironically, the ALJ rejected clinical records that provided consistent evidence of radiculapathy on grounds that those records were from other chiropractors. (Tr. 18).  In any event, Dr. Fudula's records are not "contrary" to Dr. Simons' opinions.  Instead, Dr. Fudula's records agree that the 2005 MRI shows nerve root compression or displacement and he recorded Plaintiff's consistent complaints of left leg pain, numbness and tingling.  (Tr. 220-222).  Although it is true that he found no "objective deficit to pin prick, touch or vibration in either leg" during one examination, he noted other evidence of radicular symptoms and opined that Plaintiff was precluded from any work involving any "lifting, bending or twisting."  (Tr. 222).

14

The "hospital doctors" findings that the ALJ cited as "contrary" to Dr. Simons' neuropathic findings consist of an emergency room record the day of Plaintiff's 2005 work injury, where no neurological testing was performed and no findings were made. Last but not least, Dr. Simons' clinical findings were supported by what ordinarily would be considered objective EMG and NCV studies, but which test results were rejected by the ALJ solely due to the fact that they were performed and interpreted by a chiropractor with a diplomate certification in neurology, rather than by an M.D.  (Tr. 17).  While a chiropractor is not an "acceptable medical source" for purposes of the treating physician rule, *see* 20 C.F.R. §§404.1513(a) and (d), that does not mean that an ALJ may reject the results of objective tests or other clinical evidence *solely* because it comes from a chiropractor.  *See* Soc. Sec. Rul. 06-3p, 2006 WL 2329939 (providing that all medical opinions should be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2)).

### 3. Credibility Analysis

Plaintiff does not attack the ALJ's credibility determination as a separate assignment of error, but nonetheless challenges the evaluation.  In assessing complaints of pain, an ALJ must review both objective medical evidence and other evidence.  20 C.F.R. §404.1529(c).  A fair reading of the ALJ's opinion confirms that his rejection of Dr. Simons' medical opinions, including his neuropathic findings and finding of radiculopathy, significantly impacted his assessment of Plaintiff's subjective complaints of pain and his formulation of her RFC.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475.  However, "an ALJ is not required to

15

accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.   As is often the case, the record here contains some evidence to support the ALJ's credibility determination.  (*See, e.g.*, Tr. 368, 382, 397, 418, evidence of non-compliant and inconsistent narcotic use).

On the facts presented, however, re-evaluation of the Plaintiff's credibility is warranted.  The errors concerning the ALJ's failure to fully evaluate Plaintiff's obesity at Steps 3 and 4, and his failure to adequately consider her use of a cane at the same sequential steps, likely impacted his assessment of Plaintiff's credibility.  Among other reasons provided for discounting the Plaintiff's credibility, the ALJ was troubled by the fact that Plaintiff appeared for her functional evaluation at Novacare Rehabilitation with a walker rather than a cane, implying that she was exaggerating her symptoms in order to be assessed with greater functional limitations during that functional assessment. (Tr. 18).  It is unclear whether the ALJ would interpret the same evidence in the same manner after more complete consideration of the record.  Similarly, the ALJ's apparent

rejection of all of Dr. Simons' opinions and failure to fully explain what weight he was giving to those opinions likely adversely affected the assessment of Plaintiff's credibility. Because these issues are inseparable from the ALJ's credibility assessment, the ALJ should re-evaluate his prior assessment on remand.

Of course, the ALJ might reach the same credibility determination following remand, and remains free to determine that Plaintiff is not disabled. Evidence that Plaintiff suffers from one or more objective conditions expected to cause some pain does not mean that the ALJ must find Plaintiff to be disabled. The Sixth Circuit has upheld non-disability determinations based upon chronic pain complaints involving similar complaints and medical diagnoses. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling).

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.  Upon remand, the ALJ should be directed to reconsider: (a) whether Plaintiff meets or medically equals Listing 1.04; (b) the effects of Plaintiff's obesity and use of a hand-held device for ambulation, both at Step 3 and in formulating Plaintiff's residual functional capacity at Step 4; (c) what weight to give to the RFC adopted by Plaintiff's treating physician, as well as the weight to be given to that physician's medical opinion that Plaintiff's back impairment involves pain from nerve root impingement and radiculopathy; and (d) the credibility of Plaintiff's subjective complaints;

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**


 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SUZANNE CLEMMONS,                                        Case No. 1:10-cv-902

        Plaintiff,                                        Spiegel, J.
                                                        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

19